IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

- - -

MITEL NETWORKS CORPORATION and   )    Civil Action
MITEL (DELAWARE), INC.,           )
                                  )
          Plaintiffs,             )
                                  )
     v.                           )
                                  )
FACEBOOK, INC.,                   )
                                  )
          Defendant.              )    12-325-GMS

- - -

Wilmington, Delaware
Tuesday, October 2, 2012
9:30 a.m.
Telephone Conference

- - -

BEFORE:  HONORABLE GREGORY M. SLEET, Chief Judge

APPEARANCES:

          TARA D. ELLIOTT, ESQ.
          Fish & Richardson P.C.
                    -and-
          LINDA LIU KORDZIEL, ESQ.
          Fish & Richardson P.C.
          (Washington, D.C.)

                              Counsel for Plaintiffs

          STEVEN L. CAPONI, ESQ.
          Blank Rome LLP
                    -and-
          HEIDI L. KEEFE, ESQ., and
          BRIAN P. WIKNER, ESQ.
          Cooley LLP
          (Palo Alto, CA)

                              Counsel for Defendant

THE COURT:  Good morning, counsel.  Who is on the line for Mitel?

MS. ELLIOTT:  Good morning, Your Honor.  This is Tara Elliott from Fish & Richardson on behalf of the plaintiff Mitel.  With the Court's permission, I am stepping in for colleagues who are unavailable this morning.

THE COURT:  No problem.

MS. ELLIOTT:  I have on the line with me my colleague Linda Kordziel from our D.C. office.

THE COURT:  Good morning, counsel.

MR. CAPONI:  Good morning, Your Honor.  Steve Caponi from Blank Rome.  With me today is Heidi Keefe and Brian Wikner from Cooley.

THE COURT:  Good morning.

(Counsel respond "Good morning.")

THE COURT:  A couple things.  Thanks for the joint status report.  We will get to that shortly.

I see that Facebook has filed a motion seeking to have this matter transferred to the Northern District of California, that you have requested oral argument.  I think, probably, it would occur to all counsel on the line that normally I wouldn't grant a request for oral argument. Unfortunately, in this day and age, given the press of business in federal courts today, it is difficult to hear as many things orally as my colleagues of another era, perhaps,

did.  Certainly, in a motion to transfer, I don't know that there is anything, necessarily any reason that I would be inclined to want to grant a motion for oral argument, anything, in other words, where I feel that I would benefit from further elucidation, oral elucidation from counsel about that which you have well articulated in your papers.

That said, I want to give both parties a chance to just answer a few of my questions and offer any additional thoughts you might have, but not by way of full-blown oral argument.  Okay?

MS. KEEFE:  Thank you, Your Honor.

THE COURT:  I want to set up the discussion by pointing out where we are in the law and what principles of law are going to govern here and make sure that we aren't misled by our zeal as advocates and understand what standards I am going to apply.  They are sort of well set out, I think, in an opinion that, interestingly enough, is cited by Facebook in its opening brief at Page 6, where it actually appears that you are suggesting in these particular lines near the end of the first paragraph, where you point out that neither 404 nor Jumara list the party's state of incorporation as a factor for a venue inquiry.

You cite a former colleague of mine's opinion, Judge Farnan, APV N. America -- I am not going to go through the whole cite because I can't pronounce the defendant's

name anyway.  It's a Judge Farnan opinion.  I took a moment to dig it out, even though I really haven't read as thoroughly as I would like all of your submissions. Therefore, I will not read a decision today on the motion. I think Judge Farnan in this opinion does a good job in setting out some propositions of law.  And he says in part, Although the Court must weigh the factors present in Section in Section 404(a), a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request and should not be lightly disturbed.

Of course, as you do, Facebook, and, of course, does Mitel, cite Third Circuit jurisprudence for this proposition, which is, ...whose principles, that is, the Third Circuit's, will govern and should govern this inquiry, given that this is not a patent-specific matter but one of regional process.

They cite the Schutte case.

The Judge went on to write, Thus, unless the balance of convenience of the parties is strongly in favor of the defendant, the plaintiff's choice of forum should prevail.

He says, further, Moreover, transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of transfer.

Then he goes on, I think tellingly in this case.

And I want to give Facebook an opportunity to tell me why you elected to even cite this opinion where you did, because he says this, he says, Although a party's incorporation in Delaware is not irrelevant to the Court's decision, it is not dispositive.

The Judge seemed to understand, be prescient in this language in predicting the result in Lincoln Media.  I don't know.  He is a pretty good judge.  But he probably wouldn't take on the description of a seer.  In any event, he says what he says.  And he says, Where an alternative forum is more convenient and has more substantial connections with the litigation, incorporation in Delaware will not prevent transfer.

He properly recognizes that which our brethren from the Fed Circuit have told us is the proper or improper, whichever way you want to look at it, consideration of an entity's state of incorporation.

Here we have Mitel and Mitel Delaware.  Mitel is, we all know, a Canadian corporation.  Mitel Delaware is a Delaware citizen.  And we have Facebook, a Delaware citizen.

So my initial question for Mitel is, does it matter whether, as has been asserted by Facebook, that Mitel Delaware -- let me ask it this way -- do you agree first with the assertion that Mitel Delaware is not the real party

in interest here?  And if you do agree, that the patents were really assigned to Mitel and that Mitel Delaware is, I gather, a separate legal entity within the Mitel structure, I will just throw this in for good measure, whose principal place of business is in Arizona, but that aside, we don't need to get to that particular prong yet or factor, my question for you is, does it matter?

MS. KORDZIEL:  Your Honor, certainly, the patents are assigned to the Mitel Canadian entity.  Mitel's operating systems all fall within Mitel Delaware, Inc., and its subsidiaries.  So Mitel's operations and sales within the U.S. are certainly through the Mitel Delaware entities.

THE COURT:  Okay.  So your view, in contrast to what Facebook says about that, what would you say?  Because Facebook, as I understand it, they cite the fact that these patents at issue are owned by Mitel, the Canadian entity. Do you understand what my question is?

MS. KORDZIEL:  Right, that's correct, they are owned by Mitel, the Canadian entity.  But the Mitel U.S. entities are the ones that are responsible for sales and operations within the United States.

THE COURT:  Then you would say that it's really Mitel Delaware's choice of forum, the entity incorporated here in Delaware, that should govern the analysis?

MS. KORDZIEL:  That's correct.

THE COURT:  What do you say about that, Facebook?

MS. KEEFE:  Your Honor, the patent rights are held by the Canadian company.  If they wanted to, they could have transferred those to Mitel Delaware.  But they didn't.  The real party in interest is the party that owns the patents.  Those are the rights that are going to be adjudicated.  Those are the rights that are going to control in this case.

So the real party in interest is the Canadian entity, not Mitel Delaware, with its headquarters out in Arizona.

The reason that we cited Judge Farnan's opinion is exactly as Your Honor pointed out.  It's the notion that we really do have to look behind every case to figure out what's going on and where the true conveniences and where the true interests of the parties are here.

Here you have got a Canadian company, owning patents, against Facebook, who -- all of its facts are going to be in California.

THE COURT:  Come on, counsel.  All of facts are not in California.  Let's dispense with that nonsense right now.  I am not prepared to engage this conversation to consider the entire Jumara analysis.  As I said at the outset, I have some very specific questions, so please don't

take this as leave to do so.  All right?

MS. KEEFE:  Thank you, Your Honor.

THE COURT:  Counsel, what is your reaction to what you have just heard?

MS. KORDZIEL:  I guess I would say, it certainly is the patent owner.  But Mitel is -- the Canadian company is the parent company of its U.S. subsidiaries, who are all -- I believe, and I would need to check -- but they are all incorporated in Delaware.  So by transferring this case, it really kind of denies the Mitel entities of their choice actually to be Delaware corporations and have their litigations take place in Delaware.

THE COURT:  Okay.

MS. KORDZIEL:  I will also mention, the convenience of the Mitel witnesses are certainly much more convenient for Delaware, and there are many reasons why they chose Delaware --

THE COURT:  Again, I am not going to get into that right now.  I think the papers have done a good job of enlightening me on your point of view, both sides, on where the balance lies.  I can do the analysis myself.

MS. KORDZIEL:  Thank you, Your Honor.

THE COURT:  Without further assistance.

It just struck me that this is a bit of a hybrid and a little different from the situation that generated the

mandamus order in Lincoln Media where you had a colleague of mine criticized because in that matter, apparently, though I am still not exactly convinced that that was her analysis, that she elevated the situs of incorporation of the defendant entity to an improper place in her analysis in weighing the private factors.

Okay. Let's go. I will render a decision forthwith, counsel, on this matter.

MS. KORDZIEL: Thank you, Your Honor.

MS. KEEFE: Thank you, Your Honor.

THE COURT: You are welcome.

Let's go to the schedule and see if we can put that to bed.

Again, this is always helpful, when parties can agree on dates in matters involving complex civil litigation, like patent cases, so I appreciate that.

Did plaintiff prepare this, Ms. Elliott?

MS. ELLIOTT: Yes, Your Honor, in consultation with the defendants.

THE COURT: Yes, I am sure. I am just asking, this is sort of ministerial, I guess this is in your system, so I am going to ask that you go ahead and memorialize what we do here today in the form of an order. And get it filed by the 9th.

MS. ELLIOTT: Yes, Your Honor.

THE COURT:  Thanks.

We have January 11 as the date for parties to file motions to join or amend.  I am going to assume all these dates are still at play.  Is that correct?

UNIDENTIFIED SPEAKER:  Yes, Your Honor.

THE COURT:  Except as to the pleading concerning inequitable conduct, which must be filed by May 17th, 2013.

Reliance on advice of counsel to defense of willful infringement no later than March the 1st of 2013.  The opinions ought to be produced that same day, I believe.

We will have a Markman.  Let's go through the Markman process.  The parties are to meet and confer to narrow the field of dispute in this regard on or before May 3rd.  File opening claim construction briefs May 24, by May 24.  Answers, June 14.  Brief under the Local Rule.

We will convene a Markman hearing, claim construction hearing, on July the 22nd at 9:30.

This is a two-patent case.  Right?

UNIDENTIFIED SPEAKER:  That's correct, Your Honor.

THE COURT:  Any idea how many claims are being asserted in this case yet?

UNIDENTIFIED SPEAKER:  No, not yet.

THE COURT:  Any sense from the parties as to how much time we will need to complete the Markman hearing?

UNIDENTIFIED SPEAKER:  In the proposal we had set a total of four hours.  I don't envision it lasting more than that.

THE COURT:  I must have missed that.

Other side agrees with that?

UNIDENTIFIED SPEAKER:  Yes, Your Honor.  Obviously, if you wanted more time, you could always keep us there.

THE COURT:  I see.  A total of four hours, with each side having two hours.  That is fine.  We will start at 9:30.  We should be able to complete it in the morning, or by lunch, maybe a late lunch.

Discovery, all fact discovery is to be initiated to be completed by August 17th.  Opening expert reports 9/28; rebuttals 10/26.

Expert discovery to be completed by December the 19th.

I am not going to go through the discovery dispute resolution process.  You have captured it in the order.  You have Delaware counsel to advise in this regard, of course, we know that Fish is Delaware-located.

Let's see.  You have a paragraph referring the matter to one of the Magistrate Judges for settlement.  That's good.

The summary judgment process will go as follows,

to the extent that I am still permitted to do this.  You will have opening letters February 14, responses February 28, and further replies March 7.  If I need to get together with you on the phone to discuss your papers, I will, and I will notify you.

Case-dispositive motions within two weeks of my ruling on the grant of permission or not to file case or issue-dispositive motions.

Okay.  Pretrial order will be due in chambers by the close of business June 13, 2014, proposed final pretrial order.

You have accounted for a process of the exchange of drafts.  That's good.

We will have a pretrial conference on June 30 here at the courthouse, beginning at 10:00.

Counsel, you have asked for ten days to try a two-patent case.  Why?

UNIDENTIFIED SPEAKER:  Actually, we probably would be -- we put two weeks down just to be conservative.  But it is likely that it would be less than that.

THE COURT:  What does the other side feel about that?

UNIDENTIFIED SPEAKER:  Similarly, Your Honor, I think we were trying to reserve, you know, one week per patent, depending upon how many claims were at issue and

what the final issues were.  My guess is we probably could do it in less, especially if the parties work together to narrow the number of claims.

THE COURT:  That is what I will expect.  I will give you seven business days.  It will be a timed trial.  We will talk about those issues at a later time.

The trial date is 7/14, 2014.

Anything else?

UNIDENTIFIED SPEAKER:  The only other thing in dispute, Your Honor, was regarding depositions.

THE COURT:  I am not going to get into that, counsel.  Work it out.

Anything else?

UNIDENTIFIED SPEAKER:  No, Your Honor.

THE COURT:  Take care.  Have a good day.

(Counsel respond "Thank you, Your Honor.")

(Conference concluded at 10:50 a.m.)

- - -

Reporter:  Kevin Maurer